```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JOHN DOE AND JANE ROE,
Parents on behalf of minor child M.

and,

Jane Roe,

                    Plaintiffs,                              MEMORANDUM
                                                             AND OPINION
         -against-                                           CV 23-8334 (AYS)

LEVITTOWN PUBLIC SCHOOLS
BOARD OF EDUCATION, et al.,

                    Defendants.
-------------------------------------------------------------X
```

**SHIELDS, Magistrate Judge:**

Plaintiffs John Doe and Jane Roe commenced this action on behalf of their minor child, M. (collectively "Plaintiffs"), and on behalf of Jane Roe, individually, against Defendants Levittown Public Schools Board of Education ("the Board"), as well as several individual defendants, alleging federal and state claims arising out of M.'s suspension from school on two occasions in September 2023. (Compl., Docket Entry ("DE"), [1].) Plaintiffs filed an Amended Complaint on December 20, 2023. (DE [15].) Prior to and after filing the Amended Complaint, Plaintiffs voluntarily dismissed a number of the individual defendants from this action. (Order of Azrack, J., dated Dec. 18, 2023; DE [16].) Accordingly, the only individual defendants remaining in this action are John Zampaglione ("Zampaglione"), the Principal of Jonas E. Salk Middle School – the school M. attended in September 2023 – and Daniel Agovino ("Agovino"), the Dean of Jonas E. Salk Middle School. The Board, Zampaglione, and Agovino will be collectively referred to herein as "Defendants."

1

Presently before the Court is Defendants' motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (DE [20].) For the following reasons, the motion is granted and Plaintiffs' Amended Complaint is dismissed in its entirety.

## BACKGROUND

I. The Parties

Plaintiff John Doe is the father of the minor child, M. (Am. Compl. ¶ 6.) Plaintiff Jane Roe is M.'s mother. (Id. ¶ 4.) Plaintiff M. was eleven years old at the time of the filing of the Amended Complaint and was enrolled – at that time – in the sixth grade at Jonas E. Salk Middle School, which is within the Levittown Public Schools. (Id. ¶ 5.)

Defendant Board of Education of Levittown Public Schools superintends, manages and controls the educational affairs of the school district, including the procedures for student suspension and training and vetting school personnel accordingly. (Id. ¶ 7.) Defendant Zampaglione is the Principal of Jonas E. Salk Middle School. (Id. ¶ 15.) Defendant Agovino is the Dean of Jonas E. Salk Middle School. (Id. ¶ 17.)

II. M.'s First Suspension

M., who is of Turkish descent, began sixth grade at the Jonas E. Salk Middle School in the Levittown Public Schools on September 5, 2023. (Id. ¶¶ 18-19.) On September 6, 2023 – the second day of the school year – while M. was at his locker, an African-American student, K., approached M. from behind and poked him in the right shoulder, aggravating a prior collar bone injury. (Id. ¶ 24.) M. instructed K. not to poke him but K. persisted. (Id. ¶ 25.) M. then told K., "Your lunch is over, go back to your place monkey." (Id. ¶ 25.)

K. thereafter reported to school authorities that M. called him a "black monkey." (Id. ¶ 26.) M. was summoned by school authorities, including Agovino, who advised M. that another

2

student had reported that M. had called him a "black monkey." (Id. ¶ 27.) M. insisted that he never used the word "black" but did admit to calling K. a "monkey," which he explained was in response to K.'s uninvited and persistent poking of his shoulder. (Id. ¶¶ 28-29.) M. was given in-school suspension for three days, beginning September 8, 2023 through September 12, 2023. (Id. ¶ 30; Kleinberg Decl., Ex. B, DE [20-3].) In a September 7, 2023 suspension letter sent to Plaintiffs from Zampaglione, the stated reason for the suspension was "Insubordination – Said to another student 'Keep working you black monkey.'" (DE [20-3.])

Plaintiff Roe telephoned Zampaglione on September 7, 2023, voicing regret over the September 6, 2023 incident between M. and K. (Am. Compl. ¶ 35.) Zampaglione instructed Roe to write a letter of apology to K.'s parents, which she did. (Id.) On September 8, 2023, Zampaglione similarly directed M. to write a letter of apology to K., which he did. (Id. ¶ 36.)

III.   M.'s Second Suspension

On September 20, 2023, M. was again summoned to Agovino's office and advised that K. reported that M. had again called him a monkey. (Id. ¶ 50.) Agovino showed M. a silent video of M. and K. in a corridor together but M. was adamant that he was speaking to his friend, whom he called a monkey, and that he did not know that K. was in the corridor. (Id. ¶ 51.) M. told Agovino to speak with his friend who would corroborate M.'s story. (Id.) Agovino brought M.'s friend in for questioning, who advised Agovino that "M talks strangely and does make racial remarks." (Id. ¶ 52.)

M. was called to speak with Agovino a second time, in the presence of a school social worker. (Id. ¶ 53.) Agovino told M. "We have your voice recording, we heard everything, we know you said black monkey to K." (Id. ¶ 54.) When M. asked to listen to the audio recording,

3

Agovino refused, stating that it could not be shared because it captured the voices of other students. (Id. ¶ 55.)

That same day, Roe received a telephone call from Agovino, who stated that "Your son M called K a black monkey in the corridor, and he got OSS ([out of school] suspension) for 5 days, this is unacceptable and you need to come in and get him now." (Id. ¶ 39.) Roe asked for an explanation for the suspension and Agovino advised her that M. "sometimes" uses the "N-word." (Id. ¶¶ 40-42.)

Roe and her daughter went to the middle school and met with Zampaglione, Agovino and M. (Id. ¶ 44.) Zampaglione advised Roe and her daughter that he had seen a silent video that proved the "N-word charges" against M., but he refused to permit Roe to view the video. (Id. ¶ 45.) M. acknowledged that he had seen the video but adamantly denied that he had addressed K. passing in the corridor; rather, M. stated that the video showed him speaking to one of his friends who was standing next to him, whom he called a monkey. (Id. ¶¶ 46, 50.) According to M., a few days earlier he had greeted K by saying "good morning," but K. had responded "shut up." (Id. ¶ 49.) M. maintained that he had kept his distance from K after that interaction. (Id.)

M. was given five days out-of-school suspension for the second incident, starting September 21, 2023 through September 28, 2023. (Id. ¶ 56; Kleinberg Decl., Ex. C, DE [20-4].) In a suspension letter dated September 20, 2023 from Zampaglione to Plaintiffs, the reason stated for the suspension was "Continues to make racial comments in school." (Am. Compl. ¶ 56; DE [20-4].) The September 20, 2023 suspension letter advised Plaintiffs that they may schedule an informal conference with Zampaglione prior to implementation of the suspension, during which time M. would be permitted to present his version of the events and ask questions of the complaining witnesses if their attendance is requested. (DE [20-4].) The September 20, 2023

suspension letter also advised Plaintiffs that they may appeal the suspension decision by submitting a written appeal to the Superintendent of Schools within five business days. (Id.)

Roe telephoned Zampaglione on September 20, 2023 and asked to listen to the audio recording Agovino referenced in his meeting with M. (Am. Compl. ¶ 57.) Zampaglione advised Roe that he had no knowledge of any audio recording. (Id. ¶ 58.) On September 22, 2023, Roe telephoned Zampaglione again and advised that she would complain about M.'s "abuse" to higher authorities. (Id. ¶ 60.) According to Plaintiffs, Zampaglione became infuriated and threatened to show "everyone" the silent video the school had. (Id. ¶ 61.) Roe defendend M. and criticized Agovino's behavior toward M. (Id. ¶ 62.) Zampaglione advised Roe that he would have the word "black" excised from M.'s suspension record. (Id. ¶ 63.)

M. was suspended from school from September 21, 2023 through September 28, 2023. (Id. ¶ 64.) The Amended Complaint contains no facts indicating that Plaintiffs appealed that decision.

III.    The Within Action

Plaintiffs commenced this action on November 9, 2023, alleging violations of both Federal and State law. After agreeing to dismiss certain individual defendants, Plaintiffs amended their Complaint, with the consent of Defendants, solely to correct typographical errors. In all other respects, the Amended Complaint mirrors the original Complaint.

The first two causes of action are brought pursuant to 42 U.S.C. § 1983 and allege that Defendants violated M.'s due process rights when they suspended him on September 7, 2023 and September 20, 2023, without first providing him notice and a hearing. Plaintiffs further allege that the Board has a custom or policy of suspending students without prior notice and a hearing and that, alternatively, the Board is deliberately indifferent to the need to train and vet the

5

individual defendants to ensure compliance with constitutional due process in suspending students. (Am. Compl. ¶¶ 67-84.) The third cause of action is brought solely on behalf of Roe and asserts a State law claim for intentional infliction of emotional distress as a result of Defendants' treatment of M. (Id. 85-88.)

Defendants filed their fully-briefed motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), on March 8, 2024 (DE [20].) Thereafter, the parties consented to this Court's jurisdiction for all purposes and the case was reassigned. (DE [22].) The Court now turns to the merits of the motion.

## DISCUSSION

I. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Arista Records, LLC v. Doe 3, 604 F.3d 110, 119–20 (2d Cir. 2010). Facial plausibility is established by pleading factual content sufficient to allow a court to reasonably infer the defendant's liability. Twombly, 550 U.S. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 555. Nor is a pleading that offers nothing more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," sufficient. Iqbal, 556 U.S. at 678 (2009) (quoting Twombly, 550 U.S. at 555).

As required in the context of this motion to dismiss, the factual allegations in the Complaint, though disputed in part by Defendants, are accepted to be true for purposes of this motion, and all reasonable inferences are drawn therefrom in favor of the Plaintiffs. While facts

to consider in the context of a Rule 12 motion to dismiss are generally limited to those set forth in the pleadings, a court may consider matters outside of the pleadings under certain circumstances. Specifically, in the context of a Rule 12(b)(6) motion, a court may consider: (1) documents attached to the complaint as exhibits or incorporated by reference therein; (2) matters of which judicial notice may be taken; or (3) documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); see also International Audiotext Network, Inc. v. American Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995). In rendering its decision, the Court will consider the suspension letters issued on September 7, 2023 and September 20, 2023, as well as the Levittown Public Schools Code of Conduct, as all such documents are explicitly referenced – and quoted from – in the Amended Complaint.

II. Due Process

"In order to assert a claim for violation of procedural due process rights, a plaintiff must 'first identify a property right, second show that the [government] has deprived him of that right, and third show that the deprivation was effected without due process.'" C.T. v. Valley Stream Union Free Sch. Dist., 201 F. Supp. 3d 307, 317-18 (E.D.N.Y. 2016) (quoting Local 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL-CIO v. Town Bd. of Huntington, 31 F.3d 1191, 1194 (2d Cir. 1994)). Although the United States Constitution does not provide a property right to education, New York's Constitution and education laws provide a right to education for children up to the age of eighteen. See N.Y. Const. Art. XI § 1; N.Y. Educ. L. § 3202(1). "The Second Circuit has further held that this right is protected by the Due Process Clause of the Fourteenth Amendment." Lopez v. Bay Shore Union Free Sch. Dist., 668 F. Supp. 2d 406, 419 (E.D.N.Y. 2009) (citing Handberry v. Thompson, 436 F.3d 52, 71 (2d Cir. 2006)).

"Once it is determined that due process applies, the question remains what process is due." DeFabio v. East Hampton Union Free Sch. Dist., 658 F. Supp. 2d 461, 487 (E.D.N.Y. 2009) (quoting Morissey v. Brewer, 408 U.S. 471, 481 (1972)). In Goss v. Lopez, 419 U.S. 565 (1975), the Supreme Court espoused minimal due process requirements for suspensions of ten days or fewer, stating:

> Students facing temporary suspension have interests qualifying for protection of the Due Process Clause, and due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story.

Id. at 581. "A formal hearing is unnecessary" for suspensions of ten days or fewer. Rosenfeld v. Ketter, 820 F.2d 38, 40 (2d Cir. 1987).

Here, the facts alleged in the Amended Complaint make clear that prior to the imposition of both the in-school and out-of-school suspensions, Plaintiffs were provided with notice of the charges against M. – both orally (whether in person or over the telephone) and written – and M. was afforded an opportunity to present his side of the story. In both instances, M. admitted to using the word "monkey" – the first time, he admitted it was directed towards K.; the second time, he said it was meant for his friend, not K. Regardless, M. was provided the opportunity to explain his version of the events, and did so. Moreover, the September 20, 2023 suspension letter advised Plaintiffs of their right to schedule an informal conference with Zampaglione to ask questions of complaining witnesses, as well as the procedures for appealing the suspension. Plaintiffs chose not to take advantage of either.

Based on the foregoing, Goss is satisfied and Plaintiffs were provided all the process due under that standard. See, e.g., C.T., 201 F. Supp. 3d at 318; DeFabio, 658 F. Supp. 2d at 490; MacIneirghe v. Board of Educ., No. 05-CV-4324, 2007 WL 2445152, at *19 (E.D.N.Y. Aug. 22,

2007). Plaintiffs take issue with the suspensions themselves, and the way in which they were handed down, arguing that while M. was given an opportunity to explain his side of the story, Zampaglione and Agovino did not listen to him. (Pl. Mem. of Law in Opp'n 9-10.) Plaintiffs further argue that Defendants had no credible evidence upon which to base M.'s suspension. (Id. 11.) This is simply not the standard under Goss. All that Goss requires is that a student facing suspension of ten days or less be provided "oral or written notice of the charges" and "an opportunity to present his side of the story." Goss, 419 U.S. at 581. Despite Plaintiffs' arguments to the contrary, Goss does not require a formal hearing or the opportunity for a student facing suspension "to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident." Id. At 583. Accordingly, the Court finds that Plaintiffs were afforded adequate due process under Goss. M. was entitled to due process; not the outcome he preferred.

Based on the foregoing, the Court finds that Plaintiffs fail to state a claim for violation of their procedural due process rights. As such, the first and second causes of action of the Amended Complaint are dismissed, with prejudice. Since the Court finds that the claims fail on the merits, there is no need to consider Defendants' argument with respect to qualified immunity.

III.     Municipal Liability

While not pled as a separate cause of action, Plaintiffs allege that the Board has a custom or policy of suspending students without providing due process. Alternatively, Plaintiffs allege that the Board is deliberately indifferent to the need to train and vet the individual defendants to ensure compliance with constitutional due process in suspending students. (Am. Compl. ¶¶ 71-73, 80-82.) Such allegations are construed to allege a claim for municipal liability under Monell v. New York City Department of Social Services, 436 U.S. 658 (1978).

It is black-letter law that there can be no municipal liability without an underlying constitutional violation. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) ("[The City agencies] were sued only because they were thought legally responsible for [the officer's] actions; if the latter inflicted no constitutional injury on respondent, it is inconceivable that petitioners could be liable to respondent"); see also Curley v. Village of Suffern, 268 F.3d 65, 71 (2d Cir. 2001) ("[W]e have recognized that a municipality cannot be liable for inadequate training or supervision when the officers involved . . . did not violate the plaintiff's constitutional rights."). Since Plaintiffs' claims for violation of their due process rights fail as a matter of law, it follows that Plaintiffs' municipal liability claim fails as well. Any such claim is dismissed, with prejudice.

IV.   Intentional Infliction of Emotional Distress

Having found that Plaintiffs' federal claims fail as a matter of law, there is no longer any independent basis for federal jurisdiction in the within action. Although the Court has discretion to exercise supplemental jurisdiction over Plaintiff Roe's remining state law claim for intentional infliction of emotional distress, see 28 U.S.C. § 1367(a), the Court declines to do so. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."). Accordingly, Plaintiff Roe's claim for intentional infliction of emotional distress is dismissed, without prejudice.

V.    Leave to Replead

While Plaintiffs have not sought leave to replead their claims, the Court denies any such request. Although "it is the usual practice upon granting a motion to dismiss to allow leave to replead," Cruz v. TD Bank, N.A., 742 F.3d 520, 523 (2d Cir. 2013), doing so here would be futile as Plaintiffs' federal claims are utterly baseless. No amount of repleading will alter that outcome. Moreover, without federal jurisdiction, the Court is under no requirement to preside over Plaintiff Roe's state law claim. As such, allowing repleading of the state law claim would similarly be futile. Accordingly, Plaintiff's Amended Complaint is dismissed without leave to replead.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted and Plaintiffs' federal claims are dismissed. The Court declines to exercise supplemental jurisdiction over Plaintiff Jane Roe's state law claim for intentional infliction of emotional distress. Accordingly, the Amended Complaint is dismissed in its entirety, without leave to replead. The Clerk of the Court is directed to enter judgment accordingly and to close this case.

**SO ORDERED:**

Dated:  Central Islip, New York
        January 28, 2025                                     /s/     Anne. Y. Shields
                                                             ANNE Y. SHIELDS
                                                             United States Magistrate Judge